IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HAMADI HAMID SOULEMAN,                :
                                      :        CIVIL ACTION NO. **3:CV-12-0154**
                                      :
            Plaintiff                 :        (Judge Caputo)
                                      :
            v.                        :        (Magistrate Judge Blewitt)
                                      :
STEVE CHRONISTER,                     :
et al.,                               :
                                      :
            Defendants                :

**REPORT AND RECOMMENDATION**

**I. Background.**

On January 26, 2012, Plaintiff, Hamadi Hamid Souleman, formerly an inmate at the

York County Prison ("YCP"), York, Pennsylvania, and currently an inmate at the Perry County Prison

("PCP"), New Bloomfield, Pennsylvania, filed, *pro se,* a 3-page typed (single spaced) civil rights

Complaint.[1]  **(Doc. 1)**.  Plaintiff states that his Complaint raising constitutional claims is filed under

---

[1]Plaintiff Souleman filed two previous actions with this Court, namely, *Souleman v. Sabol*, Civil No. 09-1981, M.D. Pa. and *Souleman v. Holder*, Civil No. 11-1347, M.D. Pa.  Both of Plaintiff's prior cases were Petitions for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.

In Souleman's Civil No. 11-1347 habeas case, we recommended that his habeas petition be dismissed as moot since he was no longer being detained at YCP by ICE.  We found that Souleman no longer had a case or controversy before the Court, since he did not have any adverse effects regarding his prior detention at YCP by ICE due to his release from ICE custody and removal from the United States to the Central African Republic on August 16, 2011.  On January 16, 2012, the Court adopted our August 23, 2011 R&R and closed  Souleman's Civil No. 11-1347 habeas case.

It appears that Souleman re-entered the United States after his August 16, 2011  removal from the United States to the Central African Republic.  Souleman's claims in the present case,  Civil No. 12-0154, relate to his prior confinement at YCP, *i.e.* before his August 16, 2011 removal from the United States.

42 U.S.C. §1983.  Plaintiff correctly states that this Court has jurisdiction over his §1983 action pursuant to 28 U.S.C. §1331 and § 1343(a).  Plaintiff also states that he seeks declaratory relief under 28 U.S.C. §2201 and §2202.  Plaintiff further states that he asserts claims for injunctive relief under 28 U.S.C. §2283 and §2284 as well as Fed.R.Civ.P. 65.  (Doc. 1, p. 1).  Additionally, Plaintiff correctly states that venue is proper in this Court since his claims arose at YCP.

Plaintiff names as Defendants Steve Chronister, "Warden of York County Prison," Doug Hoke, "the Commissioner of the Pennsylvania Department of Corrections" ("PA DOC"), YCP Correctional Officer ("CO") #144 Domer,[2] and Captain Kluyber of YCP.  Plaintiff states that Defendant Steve Chronister is "the Warden of York County Prison.  She (sic) is legally responsible for the operation of York County Prison and for the welfare of all the inmates in that prison."  (*Id*.).  We take judicial notice that Mary Sabol was the Warden at YCP during the relevant times of this case, *i.e* February 2010 through June 2011, and that Sabol is currently the Warden at YCP. We also take judicial notice that Steve Chronister is a Commissioner of York County and that  he does not work at YCP.  Further, Doug Hoke is not an employee of the PA DOC.  Hoke  is also a York County Commissioner.[3]

Also, on February 6, 2012, Plaintiff filed a Motion for Leave to Proceed *in forma pauperis*.  (Doc. 5).

_____

[2]Plaintiff spells Defendant Domer's name as both "Domer" and "Dommer" in his Complaint.  We shall refer to this Defendant as Domer herein.

[3]We have discovered that Defendants Chronister and Hoke are York County Commissioners from York County's website found at www.york-county.org.

## II. Allegations of Complaint.

In his Complaint, Plaintiff states that during his confinement at YCP, he was a federal detainee of "INS" and not "a criminal." (Doc. 1, p. 2). Thus, Plaintiff was a federal detainee of the U.S. Department of Homeland Security being confined at YCP while awaiting his removal proceedings before the Immigration Court.[4]  Plaintiff alleges that while he was a federal detainee confined at YCP, on February 3, 2010, he was returned to his housing unit in handcuffs escorted by Defendant Captain Kluyber to pack his belongings since he was going to be confined in the "BAU for an unauthorized area write-up."  Another inmate (Farraj) was packing Plaintiff's possessions for him when Plaintiff asked Farraj to give him his (Plaintiff 's) attorney's card from his shirt on his bed.  Plaintiff avers that "as [Farraj] put [the card] in my pocket, C/O Domer, Badge #144, pushed me into the single bed making m[e] hit my hip on the metal frame." (*Id*.).  Plaintiff then avers that Defendant Domer pulled him and slammed him into the wall causing him to hit his head.  Plaintiff states that as he began to fall since he was dizzy, Defendant Domer grabbed him, kneed him and pushed him outside of the cell into the guard rail.  Plaintiff states that while he was still handcuffed, Defendant Domer pushed him down the hallway "until Capt. Kluyber came and walked me out the block."  Plaintiff alleges that he asked Defendant Capt. Kluyber to take him to the medical department and that Capt. Kluyber told him to fill out a sick call request if he felt dizzy.  Thus, Plaintiff avers that after the unprovoked assault on him by Defendant Domer, which was seemingly witnessed by Capt. Kluyber, he was denied medical care by Capt. Kluyber and taken

---

[4]In fact, as noted above, we take judicial notice, based on Souleman's Civil No. 11-1347 habeas case, that prior to his August 16, 2011 removal from the United States to the Central African Republic, he was a federal immigration detention of ICE at YCP.

directly to the BAU.  Plaintiff also indicates that at no time was he a threat to Defendant Domer since he was handcuffed.

Plaintiff further alleges that he suffered injuries as a result of Defendant Domer's assault on him, including hitting his head on the wall, and that he has "a lump in the brain and severe back pain and loss of memory." (*Id*.).  Plaintiff also alleges that the medical staff at YCP did not notify him that he had a lump in his brain and that the lump was discovered when he was taken to York County Hospital for a CAT scan and then to Apple Hill Clinic for an MRI.  Plaintiff further alleges that he is still suffering from headaches, blurry vision, back pain, and loss of memory due to the assault.

Moreover, Plaintiff avers that on June 27, 2011, while still confined at YCP, he refused treatment by an outside eye doctor for his eyes and that he was placed in segregation.  Plaintiff avers that Defendant Capt. Kluyber then "took all [of his] legal paperwork and evidence to support [his] immigration case." (*Id*.).  Plaintiff states that all of his immigration evidence was taken and never returned to him.[5]

Plaintiff states that he filed grievances at YCP about the February 3, 2010 alleged assault by Defendant Domer as well as the immigration evidence that was allegedly taken by Defendant Kluyber.  With respect to the alleged assault incident, Plaintiff states that he filed a grievance (No. 033110E-1081) on February 3, 2010, and that it was denied on May 19, 2010.  Plaintiff then states that he appealed the denial of his grievance and that his appeal was denied.  Plaintiff also states that

---

[5]As noted above, based on  Souleman's Civil No. 11-1347 habeas case, Plaintiff was removed from the United States to the Central African Republic on  August 16, 2011.

he filed a grievance about his confiscated immigration evidence and that he met with the YCP grievance counselor to have his evidence returned, but it could not be found.  Plaintiff then states that he appealed the grievance decision regarding his missing evidence to the YCP deputy warden and then to the York County Commissioners, and that his appeal was ignored and he never received a response.[6]

Thus, we find that Plaintiff is raising an excessive force claim against Defendant CO Domer, a denial of medical care claim against Defendant Kluyber, and a denial of right to access to the court claim against Defendant Kluyber. Plaintiff appears to implicate Defendants Chronister and Hoke, Commissioners of York County, only based on their alleged failure to respond to his grievances final appeals.  Plaintiff indicates that his assault and denial of medical care claims are brought under the Eighth Amendment for violation of his rights against cruel and unusual punishment. (*Id.*, p. 3).  We find that Plaintiff's constitutional claims for excessive force and denial of medical care against the YCP Defendants are under the Fourteenth Amendment Due Process Clause since Plaintiff was a federal detainee of ICE awaiting immigration proceedings.  *See Adekoya v. Chertoff*, 431 Fed.Appx. 85, 88 (3d Cir. 2011)("Because [Plaintiff] was an immigration detainee

---

[6]Thus, Plaintiff indicates in his Complaint that he filed a grievances at YCP regarding his instant claims and that he exhausted his administrative remedies**.**  Plaintiff must exhaust all of his YCP available administrative remedies with respect to each of his claims prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*  However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

at the time of the alleged constitutional violations, he was entitled to the same protections as pretrial detainee."(citations omitted).   [W]hen pretrial detainees challenge their conditions of confinement, [the court] must consider whether there has been a violation of the Due Process Clause of the Fourteenth Amendment." *Id.*(citations omitted).   Further, we find that Plaintiff has only named Chronister and Hoke as Defendants based on *respondeat superior* and based on their alleged failure to respond to his grievances appeals.

As relief in his Complaint, Plaintiff requests, in part, as follows:

A. A declaration that the acts and omissions described herein violated Plaintiff 's rights under the Constitution and laws of the United States.

B. A preliminary and permanent injunction ordering Defendants Capt. Kluyber and C/O Domer to stop unlawfully assaulting prisoners and to treat prisoners fairly.

C. Punitive damages in the amount of $10,000,000[.]

(*Id.*, p. 3).

Therefore, Plaintiff seeks punitive damages, a declaratory judgment as well as injunctive relief.   Plaintiff states that he sues the state actors Defendants in both their individual and official capacities.   (*Id.*, p. 1).   However, Plaintiff can only seek monetary damages from the state actor Defendants in their individual capacities.[7]

---

[7]As stated, Plaintiff indicates that he seeks money damages, *i.e.* punitive, from Defendants and he states that  he sues Defendants in both their individual and official capacities. To the extent that Plaintiff seeks monetary damages from Defendants, he can only sue the state actor Defendants in their  individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).  Thus, we will recommend that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed with prejudice.

Further, insofar as Plaintiff seeks injunctive relief requesting this Court to order Defendants Kluyber and Domer to stop assaulting inmates at YCP, we find this request is moot since Plaintiff is no longer confined at YCP.  (Doc. 1, p. 3).  Also, we find that Plaintiff's request for a declaratory judgment against Defendants, to the effect that their past conduct violated his constitutional rights, should be dismissed.

We now screen Plaintiff's pleading (Doc. 1) as we are obliged to do under the PLRA.[8] *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).

## III.  PLRA.

As stated, Plaintiff filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. §1915.  (Doc. 5).  The Prison Litigation Reform Act of 1995,[9] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C.§ 1915.[10]  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to

[8]The undersigned has been assigned this case for all pre-trial matters.

[9]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

state a claim on which relief may be granted;
or (iii) seeks monetary relief against a
defendant who is immune from such relief.

## IV.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[11]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

---

[11]Plaintiff indicates in his pleading that Defendants were state actors. (Doc. 1, p. 1).

claims are based.  *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009).  As the Court stated

in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a

viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation

of a Plaintiff's constitutional rights.") citing *Rode, supra*.

The Court uses the same standard to screen a complaint under the PLRA as it does for

a 12(b)(6) motion to dismiss.  *See Banks v. County of Allegheny*, 568 F.Supp.2d at 588; *O'Connell

v. Sobina*, 2008 WL 144199 (W.D. Pa.).

## V.  Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court

stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard
> applicable to a motion to dismiss in light of the United States Supreme Court's
> decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft
> v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009).   "[T]o survive a motion to
> dismiss, a complaint must contain sufficient factual matter, accepted as true
> to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949
> (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a
> complaint that states a plausible claim for relief survives a motion to dismiss."
> *Id*. at 1950. Moreover, it continued, "[d]etermining whether a complaint
> states a plausible claim for relief will ... be a context-specific task that requires
> the reviewing court to draw on its judicial experience and common sense."
> *Id*. (citation omitted).  *McTernan v. City of York,* 577 F.3d 521, 530 (3d
> Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in

detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009).

## VI. Discussion.

### 1. *Official Capacity Claims for Damages*

As noted, Plaintiff cannot seek monetary damages from the named Defendants in both their individual and official capacities. To the extent that Plaintiff seeks monetary damages from Defendants, *i.e.* punitive damages, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v.*

*Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa.

2010);  *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

Plaintiff also cannot seek punitive damages as against Defendants in their official capacities.

Plaintiff can only seek punitive damages as against Defendants in their individual or personal

capacities.  *See Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625 (1983).  Thus, Plaintiff's claims for

punitive damages against Defendants in their official capacities should be dismissed with prejudice.

Based upon well-settled case law, we find that the Court should not allow Plaintiff to

amend his Complaint with respect to his damages claims against Defendants in their official capacities

since we find it would be futile.  *See Van Tassel v. Lawrence County Domestic Relations Section,* 659

F.Supp.2d 672, 696 (W.D. Pa. 2009)*; Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir.

2002)(The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose

Complaint fails to state a cognizable claim is entitled to amend his pleading unless it would be futile.);

*Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

Further, Plaintiff's requests for specific amounts of monetary damages, *i.e.* $10,000,000

in punitive damages (Doc. 1, p. 3), should be stricken.  Since Plaintiff seeks unliquidated damages,

he cannot claim specific sums of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's request for

specific monetary damages should be stricken from his Complaint.

2. *Request for Injunctive Relief*

As his request for injunctive relief, Plaintiff states that he seeks this Court to order

Defendants Domer and Kluyber to stop unlawfully assaulting inmates at YCP and to treat inmates

fairly at YCP.  As noted, Plaintiff has not been confined at YCP since his August 2011 removal from

11

the United States.  We find that Plaintiff's request for injunctive relief against Defendants Domer and

Kluyber, prison staff at YCP,  to prevent them from assaulting inmates at YCP to be moot since Plaintiff

is no longer confined at YCP and he does not claim that there is a reasonable likelihood he will be

returned to YCP in the future and again subjected to same conduct.  *See Toney v. Bledsoe*, 427

Fed.appx. 74 (3d Cir. 2011); *Kerce v. Lappin,* 2011 WL 864470, \*3 (M.D. Pa. 3-9-11)("As a general

rule, an inmate's transfer to another prison, or his outright release from incarceration, moots a request

for a declaratory judgment or injunctive relief.")(citing *Sutton v. Rasheed,* 323 F.3d 235, 248 (3d Cir.

2003).

      3.  *Request for Declaratory Judgment*

      We find that Plaintiff's request for declaratory relief that this Court declare the alleged

conduct of Defendants on February 2, 2010 and on June 27, 2011, during his prior confinement at

YCP  violated his constitutional rights should also be dismissed from this §1983 civil rights action.

Initially, we find that Plaintiff's request for declaratory relief, like his request for injunctive relief is

moot.  *See Kerce v. Lappin,* 2011 WL 864470, \*3.

      Moreover, in *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009), the Court

stated:

> To satisfy the standing and "case or controversy" requirements of Article III, a party
> seeking a declaratory judgment "must allege facts from which it appears there is a
> substantial likelihood that he will suffer injury in the future." *Bauer v. Texas,* 341
> F.3d 352, 358 (5th Cir.2003) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102-
> 03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Here, Blakeney seeks a declaration
> merely that defendants' "acts" and "policies" violate the United States and
> Pennsylvania Constitutions. He does not allege that he will be subjected to that
> alleged conduct in the future. Moreover, even if defendants violated Blakeney's
> rights in the past as he alleges, he is not entitled to a declaration to that effect. *See
> Brown v. Fauver,* 819 F.2d 395, 399-400 (3d Cir.1987) (directing District Court to

dismiss prisoner's Section 1983 claim for prospective relief where appellant "has done nothing more than allege past exposure to unconstitutional state action").

Plaintiff Souleman has not sought declaratory relief alleging that he will be again subjected to assaults, denial of medical care and confiscation of his legal paperwork at YCP in the future by Defendants in violation of his constitutional rights. In fact, as stated, Plaintiff is no longer even confined at YCP, he has not been confined at YCP since his August 2011 removal from the Untied States, and he does not state that there is a reasonable likelihood he will be returned to YCP in the future and again subjected to same conduct. Thus, with respect to Plaintiff's stated request for declaratory relief seeking this Court to declare the alleged conduct of Defendants, in 2010 and 2011 during his prior confinement at YCP, violated his constitutional rights, we find that Plaintiff lacks standing to request a declaratory judgment regarding alleged past exposure to unconstitutional actions by Defendants. *See Blakeney, supra.* We also find Plaintiff's request for declaratory relief to be moot. *See Kerce v. Lappin, supra.*

Therefore, we will recommend that Plaintiff's request for an injunction and his request for declaratory relief (Doc. 1, p. 3) be dismissed from this case with prejudice. *See Tinsley, supra; Blakeney, supra; Kerce v. Lappin, supra.*

Based on the above discussion, we find futility of allowing Plaintiff to amend his Complaint with respect to his request for an injunction and his request for declaratory relief. *See Alston v. Parker,* 363 F.3d at 235-236.

*4. Supervisory Defendants York County Commissioners Chronister and Hoke*

As stated, Defendants Chronister and Hoke are York County Commissioners.  Plaintiff incorrectly states that Hoke is the Commissioner of the PA DOC and that Defendant Chronister is the Warden of YCP.

Notwithstanding Plaintiff's inaccuracies as to the positions held by Defendants Hoke and Chronister, we find that Plaintiff has impermissibly named both supervisory Defendants based on *respondeat superior*.  In fact, as detailed above, we do not find that Plaintiff has sufficiently stated the personal involvement of Defendants Hoke and Chronister with respect to any of his constitutional claims.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*");
> *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have  been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S.
> at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

14

In his Complaint, Plaintiff is clearly attempting to assert his claims against Defendants Hoke and Chronister based only on *respondeat superior*.  Further, neither Defendant Hoke nor Defendant Chronister are  sufficiently stated to have been personally involved with any cognizable violation of Plaintiff's constitutional  rights.  Nor are Defendants Hoke and Chronister alleged to have directed the two other YCP  Defendants to violate his rights.  *Id.*   Plaintiff does not even alleged that Defendants Hoke and Chronister were at YCP during the relevant times that his claims arose.

The Supreme Court in *Iqbal* repeated the personal involvement necessary in a §1983 action.  In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court, citing *Iqbal*, stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

In *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D. Pa.), the Court stated:

> The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the

complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

In order to state an actionable claim under §1983, as indicated above, a plaintiff must allege that a person has deprived him of a constitutional right, and that the person who caused the deprivation acted under color of state law. *See Holocheck v. Luzerne County Head Start, Inc.,* 385 F. Supp. 2d 491, 498-499 (M.D. Pa. 2005); *Ayers,* 2009 WL 801867, *5; *Santiago, supra.* Plaintiff has not alleged a causal connection between the direction by Defendants Hoke and Chronister and the violation of his constitutional rights by the other two Defendants. *See Santiago, supra.*

Further, Plaintiff seems to name Commissioners Hoke and Chronister as Defendants based on their alleged failure to respond to his final appeals of his grievances. This is insufficient personal involvement.

It is well-established that inmates do not have a constitutionally protected right to a prison grievance system. *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *See also Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (ruling that federal grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure). It is further well-settled that officials handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser,* Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005). *See also Mitchell v. Dodrill,* 696 F.Supp.2d 454, 469 (M.D.Pa. 2010).

This Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as YCP does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, *supra* (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra. See also Mincy v. Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.) (claims by inmates regarding the prison grievance procedures are unavailing since "prisoners do not have a constitutional right to prison grievance procedures." (citations omitted).

Plaintiff does not allege in his Complaint any actual personal involvement of Defendants Commissioners Hoke and Chronister with respect to his constitutional claims. Additionally, as stated, Plaintiff seemingly alleges that the only personal involvement of Defendants Commissioners Hoke and Chronister was in failing to fully investigate and failing to properly respond to his appeals of his grievances. Plaintiff has failed to sufficiently state any personal involvement of Defendants Commissioners Hoke and Chronister. Nor does Plaintiff allege that Defendants Commissioners Hoke and Chronister were personally involved in his medical care at YCP following the alleged assault and, in the decisions how to treat his alleged injuries. We, therefore, will recommend that Defendants Commissioners Hoke and Chronister be dismissed from this case with prejudice.

Thus, we will recommend that Defendants Hoke and Chronister be dismissed with prejudice.  Based upon the above, we find that the Court should not allow Plaintiff to amend his Complaint with respect to Defendants Hoke and Chronister, since we find that it clearly fails to state a cognizable claim against these supervisory Defendants and that it would be futile to allow an amendment regarding these Defendants.  The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless it finds bad faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

5. *Defendants CO Domer and Captain Kluyber*

As mentioned, Plaintiff states that his constitutional rights under the Eighth Amendment were specifically violated by Defendants Domer and Kluyber in his Complaint.  As mentioned, we find that Plaintiff's claims against Defendants Domer and Kluyber are brought under the Due Process Clause of the Fourteenth Amendment.  *See Adekoya, supra*.  In *Adekoya,* the Third Circuit stated that:

> Because Adekoya was an immigration detainee at the time of the alleged constitutional violations, he was entitled to the same protections as a pretrial detainee. *See Edwards v. Johnson,* 209 F.3d 772, 778 (5th Cir.2000). "[W]hen pretrial detainees challenge their conditions of confinement, we must consider whether there has been a violation of the Due Process Clause of the Fourteenth Amendment." *Hubbard v. Taylor,* 538 F.3d 229, 231 (3d Cir.2008). The Supreme Court has instructed that "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). To determine whether challenged conditions of confinement amount to punishment, the " *Bell* Court mandated a pragmatic approach ... and formulated the 'reasonable relationship' test...." *Stevenson v. Carroll,* 495 F.3d 62, 67 (3d Cir.2007). Under that test, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.' " *Bell,* 441 U.S. at 539, 99 S.Ct. 1861.

18

In *Tapp v. Proto*, 718 F.Supp. 2d 598, 616 (E.D. Pa. 2010), the Court stated that since the Plaintiff inmate was a pretrial detainee at the prison, his constitutional claims regarding the conditions of confinement and denial of proper medical care fell under the Fourteenth Amendment Due Process Clause. (citations omitted).  Thus, since Plaintiff Souleman was a federal immigration detainee at YCP at the time his assault, denial of proper medical care and denial of access to the courts claims arose, his claims should be examined under the Fourteenth Amendment's due process standard. *Id*. at 621-22; *Brown v. Deparlos*, 2011 WL 1158289, *4 (M.D. Pa. 3-28-11)(Court held that if Plaintiff inmate was a pretrial detainee, his constitutional claims had to be considered under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment)(citations omitted).  As the *Tapp* Court stated, "most Third Circuit decisions analyzing pretrial detainee claims of inadequate medical care have used the Supreme Court's Eighth Amendment rubric set forth in *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285 (1976)."(footnote omitted).  718 F.Supp. 2d at 622; *Brown*, 2011 WL 1158289, *4.  Thus, as in *Tapp* and *Brown*, we analyze Plaintiff Souleman's Fourteenth Amendment claims of assault and denial of proper medical care under the Eighth Amendment  standard used to evaluate such claims.

In *Caldwell v. Luzerne County Corrections Facility Management*, 2010 WL 3191855, *7 (M.D. Pa.), the Court stated that the "Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials.  The Eighth Amendment both restrains prison officials from applying excessive force against inmates, ..., and it imposes affirmative duties on prison officials to provide humane conditions of confinement, ... ." (internal citations omitted).

In *DeFranco v. Wolfe*, 2010 WL 2762968, *10 (3d Cir. 7-14-10), the Third Circuit stated:

> To demonstrate an Eighth Amendment violation, [the inmate] must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). We have interpreted this to mean that there are two prongs to the inquiry: (1) deliberate indifference on the part of prison officials; and (2) the prisoner's medical needs are serious. *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *accord Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999).
>
> Deliberate indifference is more than an "inadvertent failure to provide adequate medical care." *Estelle,* 429 U.S. at 105, 97 S.Ct. 285. It is more than mere negligence or medical malpractice without some more culpable state of mind. *Id.* at 106, 97 S.Ct. 285; *Rouse,* 182 F.3d at 197; *Lanzaro,* 834 F.2d at 346. For example, disagreement of professional opinion among doctors does not equal deliberate indifference. *Rouse,* 182 F.3d at 197; *Lanzaro,* 834 F.2d at 346. Instead, it requires "obduracy and wantonness ... [,] which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse,* 182 F.3d at 197 (citations omitted).

The Third Circuit further defined deliberate indifference in *Natale v. Camden City Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The Court held:

> A prison official acts with deliberate indifference to an inmate's serious medical needs when "he knows of an disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment... ." *Estelle*, 429 U.S. 97. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id* at 107. "[A]s long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a civil rights cause

of action, and an inmate's disagreement with medical treatment is insufficient to establish a "deliberate indifference." *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

*See also George v. PA DOC*, 2010 WL 936778, *5.

We find that Plaintiff has stated an excessive force claim against Defendant CO Domer regarding the February 3, 2010 incident at YCP.  We do not find that Plaintiff has stated Defendant Kluyber was personally involved with the alleged assault by Defendant Domer, but we find that Plaintiff appears to allege that Kluyber was present at the time of the alleged assault and failed to intervene.   As discussed, Plaintiff alleges that Defendant Kluyber took him, handcuffed, to his cell in his housing unit to pack up his belongs before he was to be confined in the BAU due to  a misconduct report, and that while another inmate packed up his stuff, Defendant CO Domer repeatedly assaulted him.       Thus, we find a failure to protect claim stated against  Defendant Kluyber.  In *Pearson v. Karnes*, 2011 WL 864792, *3, the Court stated:

> To effectively plead an Eighth Amendment failure to protect claim, a plaintiff must allege that he endured conditions "posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977,128 L.Ed.2d 811 (1994). Additionally, the correctional officer who is alleged to violate the Eighth Amendment must have demonstrated "deliberate indifference" to the inmate's health or safety. *Id.* at 835, 114 S.Ct. at 1977. Prison officials exhibit deliberate indifference when they know of, and disregard, an excessive risk to the inmate's safety. *Id.* Therefore, negligence, or a lack of due care under the circumstances, is insufficient to support a claim that the defendants failed to protect the prisoner. *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). An officer has a duty to take reasonable steps to prevent a victim from another officer's use of excessive force, but "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Smith v. Mensinger,* 293 F.3d 641, 651 (3d Cir.2002).

Plaintiff seems to state that Defendant Captain Kluyber was present during the alleged assault by CO Domer and that Kluyber was  personally aware, or should have been aware, of a substantial risk of harm to him and disregarded it.  *Id.*  As mentioned, Plaintiff only avers that Defendant Domer actually used unprovoked excessive force on him.  Based on *Pearson v. Karnes, supra,* we find that Plaintiff's allegations are sufficient to state a failure to protect claim against Defendant Kluyber.  Thus, we will recommend that Plaintiff's excessive force claim against Defendant Domer and his  failure to protect claim against Defendant Kluyber be allowed to proceed.

Based on the above, we also find that Plaintiff has stated a denial of medical care claim against Defendant Kluyber and, we will recommend that this claim be allowed to proceed.  *See DeFranco v. Wolfe*, 2010 WL 2762968, *10.

We do not find that Plaintiff has stated a cognizable claim that on June 27, 2011, Defendant Kluyber denied him access to the courts by confiscating his legal paperwork and evidence he needed to support his immigration case.  Plaintiff has failed to show his right to access to the immigration court was violated by Defendant Kluyber.  Plaintiff has not stated any actual harm to his immigration court proceeding as result of Defendant Kluyber's alleged conduct of seizing his legal documents and evidence.

As the Third Circuit Court stated in *Salkeld v. Tennis*, C.A. No. 07-1776, (3d Cir. 9-13-07), slip op. p. 3, 2007 WL 2682994, * 1 (3d Cir. 2007) (Non-precedential):

> An inmate alleging a violation of *Bounds v. Smith*, 430 U.S. 817 (1977), must show an actual injury, a requirement that derives from the doctrine of standing.  *Lewis v. Casey*, 518 U.S. 343, 349 (1969). Specifically, the inmate must show that the alleged shortcomings in the prison policy "hindered his efforts to pursue a legal claim." *Id.* at 351.  *See also Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997)

(no First Amendment right to subsidized mail).  However, the injury requirement is not satisfied by just any type of frustrated legal claim; the legal claim must relate to a direct or collateral challenge to a prisoner's sentence of conditions of confinement.  *Lewis*, 518 U.S. at 349 ("Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") (emphasis in original).

In *O'Connell v. Sobina*, 2008 WL 144199, *10 (W.D. Pa.), the Court stated:

> In *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts.  Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.  *Christopher*, 536 U.S. at 415.

In his Complaint, Plaintiff does not allege that he suffered any actual injury to his immigration court case due to the conduct of Defendant Kluyber.  *See Adekoya v. Chertoff*, 431 Fed.Appx. at 89("a prisoner alleging that he was deprived of his right to access the courts must allege that he suffered some injury as a result of the deprivation.")(citations omitted).  Thus, since Plaintiff does not state that any underlying claims were harmed by Defendant Kluyber's alleged conduct, he fails to state a claim for denial of access to the court.  *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002)(requiring allegations that the document inmate was unable to file was non-frivolous to state an access to courts claim); *Romansky v. Stickman*, 147 Fed. Appx. 310, 312 (3d Cir. 2005)(Non-Precedential)("*Christopher* [case] requires that 'the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than

hope.")(citing *Christopher* at 416); *O'Connell*, 2008 WL 144199, * 10; *Tapp v. Proto*, 404 Fed.Appx. 563, 566 (3d Cir. 2010).[12]

 Therefore, we will recommended that Plaintiff Souleman's claim for denial of access to the court against Defendant Kluyber be dismissed without prejudice.  Based on the above, we do not find that it would be futile if the Court allowed Plaintiff to amend his denial of access to the court claim against Defendant Kluyber.  *See Alston, supra.*

## VII.  Recommendation.

 Based on the above, it is respectfully recommended that Plaintiff Souleman's claims for monetary damages against Defendants in their official capacities be dismissed with prejudice.  It is also recommended that Plaintiff's request for an injunction and his request for declaratory relief (Doc. 1, p. 3) be dismissed from this case with prejudice.  Further, it is recommended that Plaintiff's Complaint **(Doc. 1)** against Defendants York County Commissioners Chronister and Hoke be dismissed with prejudice.  It is recommended that Plaintiff's Fourteenth Amendment Due Process Clause excessive force claim against Defendant Domer and his  failure to protect claim against Defendant Kluyber be

---

[12]Also, as noted above, in Souleman's Civil No. 11-1347 habeas case, the Court dismissed as  moot his habeas petition since he was no longer being detained at YCP by ICE and since he was released from ICE custody and removed from the United States to the Central African Republic on August 16, 2011.  It appears that Souleman re-entered the United States after his August 16, 2011 removal from the United States to the Central African Republic since  he is now confined in Perry County Prison.  As stated above, Souleman's present claims occurred during his prior confinement at YCP, before he was removed from the United States on August 16, 2011.  Plaintiff appears to be again subject to removal from the United States since he states in his present Complaint that he is an immigration detainee of ICE at Perry County Prison.  In fact, we take judicial notice that Plaintiff has a pending criminal case against him in the Middle District of Pennsylvania  M.D. Pa. for failure to depart the United States, in violation of 8 U.S.C. § 1253(a)(1)(C).  *See U.S. v. Souleman*, 11 CR-0273**,** M.D. Pa.

allowed to proceed.  It is also recommended that Plaintiff's Fourteenth Amendment Due Process Clause denial of medical care claim against Defendant Kluyber be allowed to proceed.  Further, it is recommended that Plaintiff's denial of access to the immigration court claim against Defendant Kluyber be dismissed without prejudice.

Finally, it is recommended that this case be recommitted to the undersigned for further proceedings as against Defendants Domer and Kluyber.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 13, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HAMADI HAMID SOULEMAN,   :
            :   CIVIL ACTION NO. **3:CV-12-0154**
            :
     Plaintiff   :   (Judge Caputo)
            :
     v.     :   (Magistrate Judge Blewitt)
            :
STEVE CHRONISTER,    :
et al.,          :
            :
     Defendants  :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 13, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 13, 2012**